## Matthews *v*. State of Indiana

[No. 24,884.   Filed May 11, 1928.]

*James W. Burns,* for appellant.

*Arthur L. Gilliom,* Attorney-General, and *George J. Muller,* Deputy Attorney-General, for the State.

MYERS, J.—Appellant was convicted and adjudged guilty of keeping a house of ill fame. §2562 Burns 1926. The overruling of her motion for a new trial, specifying that the finding is contrary to law and not supported by sufficient evidence, is the error here assigned.

In the trial of all criminal prosecutions, the trial court is charged with the responsibility, in case of a motion for a new trial for insufficient evidence or because contrary to law, of determining whether or not the evidence to support a conviction meets the requirements of the law. Such responsibility, in the interest of justice, calls for a review of the evidence as well as the law justifying a conviction. On appeal, this court presumes correct action of the trial court, or, in other words, that a fair trial was had and a correct conclusion reached, but when, as here, there is a showing of no evidence to warrant a conviction, and for that reason the finding is contrary to law, a question of law is presented for review on appeal. Under such circumstances, it becomes the duty of this court to examine the evidence, not weigh it, giving credit to that only most favorable to the state.

On behalf of the state, three witnesses testified, two lived at Hammond and one at Indianapolis. One of the Hammond witnesses and the one from Indianapolis were connected with the United States Public Health Service. The business of the other Hammond witness is undisclosed.

First, as to the house generally. It is known as the "Chicago Hotel." Soft drinks were sold in the front room downstairs and back of it was a dining room and kitchen. The second floor had seven bed rooms, two

lounging rooms and bath room. The health service witness from Hammond made five trips to this place between April 7, and June 16, and gave a detailed account of his experiences there on each trip. On each of these trips, he was upstairs and talked with the girls, two in number, except at one time three were there. He described their manner of dress and their attention to and talk with him and other men. Upon one occasion, he looked into each of the bed rooms and accompanied one of the girls to her room, but said nothing occurred while there except she removed his hat and told him she was examined each week. In answer to the question calling for the reputation of the house, said that it was reputed to be a house of prostitution, but it clearly appears from the evidence that this answer was based upon his own knowledge. The other Hammond witness and the witness from Indianapolis, one of them having been there three times and the other once, detailed what they heard and saw of the girls, and if we were to exclude, which we do, what the witness said as to the reputation of the house, the evidence remaining would warrant the court in finding that it was a house of ill fame, and, second, that it was a house where the sexes resorted for the purpose of prostitution and lewdness. However, there must be proof of the further fact that appellant kept the house. The Hammond health officer, in substance, testified that upon the completion of his interview with the girl in her room, she, leaving first and going to appellant, said: "That fellow that is in my room just coming out is a government man"; that he then approached appellant and told her he was looking over conditions in Gary, and she replied that she was not the houselady but was acting for her while she was in Detroit, and, in answer to a question by the witness as to how often the girls were examined, said, "once a week"; that she walked downstairs with him and called the other girl down so that

the witness might get her name. Appellant denied telling the health officer that she was the acting landlady, but, on the contrary, testified that she told him she was merely the cook employed at $80 a month, board and room; that she prepared the meals for the boarders and lunches for the patrons of the soft-drink parlor, and had nothing to do with the upstairs. It was in charge of the bartender.

Such was the evidence bearing upon the question as to who kept the house. It must be conceded that the evidence to support the material fact under consideration was weak. It rested upon giving the testimony of the health officer full credit and excluding everything else. This the trial court must have done, and whether right or wrong, it would require us to weigh the evidence in order to change the result, and this we cannot do.

Judgment affirmed.